**Renée E. Rothauge**, OSB #903712
E-mail: renee.rothauge@bullivant.com
**Chad M. Colton**, OSB #065774
E-mail: chad.colton@bullivant.com
BULLIVANT HOUSER BAILEY PC
300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon  97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

**Robert E. Bluth**, OSB #902111
E-mail: bbluth@harryanddavid.com
HARRY AND DAVID
PO Box 299
Medford, Oregon  97501-0299
Telephone: (541) 864-2525
Facsimile: (541) 864-2885
Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| HARRY AND DAVID, an Oregon corporation; and HARRY AND DAVID OPERATIONS, INC., a Delaware corporation,<br><br>    Plaintiffs,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION, a New York corporation,<br><br>    Defendant. | Civil No.: 08-CV-235-PA<br><br>**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs Harry and David and Harry and David Operations, Inc. file this Complaint

against defendant International Business Machines Corporation and allege the following:

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**
**Page 1**

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Harry and David is an Oregon corporation with its principal place of business at 2500 S. Pacific Hwy., Medford, OR 97501. Harry and David is a citizen of Oregon.

2.      Plaintiff Harry and David Operations, Inc. is a Delaware corporation with its principal place of business at 2500 S. Pacific Hwy., Medford, OR 97501. Harry and David Operations, Inc. is a citizen of Oregon and Delaware.

3.      Defendant International Business Machines Corporation ("IBM") is a New York corporation with its principal place of business at 1 New Orchard Road, Armonk, New York 10504-1722. IBM is a citizen of New York.

4.      The amount in controversy in this case exceeds $75,000, exclusive of interest and costs.

5.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332.

6.      A substantial part of the events and omissions giving rise to this claim occurred within the United States District of Oregon.

7.      Venue is proper under 28 U.S.C. § 1391(a)(2).

8.      Pursuant to contract between the parties, New York law governs this dispute.

## GENERAL ALLEGATIONS

9.      At all material times, IBM was a New York corporation with its principal place of business in New York, authorized to do business in the state of Oregon. IBM is engaged in the business of, among other things, creating and licensing software.

10.      IBM is one of the largest computer technology companies in the world. According to IBM, it is a globally integrated innovation company, serving the needs of enterprises and institutions worldwide. To help clients achieve growth, effectiveness, efficiency and the realization of greater value through innovation, IBM draws upon the

**Bullivant|Houser|Bailey PC**

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
Page 2**

world's leading systems, software and services capabilities.  IBM earned over $91 billion in revenue in 2006.

11.     IBM has created and sold licenses for thousands of software programs throughout the world.

12.     IBM has a sophisticated process for creating and monitoring patents in its market segments.  IBM is able to identify gaps in its patent portfolio with ease.  It knows which of its patents cover its products and which patents held by others read on the technology that IBM sells.

13.     IBM created and sold an e-commerce program known as Net Commerce 3.2 that contains software for an internet based customer catalog.  Specifically, this catalog software allows web users to access and store pictures of items for sale.  IBM also created and sold upgrades for Net Commerce 3.2, including a program known as Websphere Commerce Business Edition 4.2 ("Websphere 4.2") and a program known as Websphere Commerce Business Edition 5.6 ("Websphere 5.6") (these three programs are collectively referred to as "the E-commerce Programs").  Although the Websphere 4.2 and Websphere 5.6 upgrades contain some additional features, the basic method for operating the internet based customer catalogs available through IBM's E-commerce Programs remained constant.

14.     IBM did not procure patents for the E-commerce Programs.  Further, IBM did not obtain licenses for the E-commerce Program technology before selling it to its customers.

15.     IBM acted through its agents, employees, and representatives, who at all material times acted within the course and scope of their agency for IBM.

## THE AGREEMENT

16.     In 1991, IBM entered into an agreement with Harry and David and Harry and David Operations, Inc. (collectively "Harry and David") known as the IBM Customer Agreement ("the Customer Agreement").

/ / / /

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
Page 3**

17.    The Customer Agreement governs all transactions by which Harry and David obtains hardware, programs, program packages and related services from IBM.

18.    The Customer Agreement provides that in the event that a third party claims that an IBM product infringes upon that party's patent, IBM will defend Harry and David against that claim at IBM's expense and pay all costs, damages, and attorney fees that a court finally awards or that are included in a settlement approved by IBM ("the Indemnity Clause").

19.    The Customer Agreement further provides that for each warranted IBM program and program package, IBM warrants that it has the right to license those programs.

20.    In 1999, Harry and David purchased Net Commerce 3.2 from IBM.

21.    In 2001, Harry and David purchased Websphere 4.2 from IBM as an upgrade.

22.    On December 23, 2004, Harry and David purchased Websphere 5.6 from IBM as an upgrade.

23.    During the course of Harry and David's business relationship with IBM, IBM repeatedly represented to Harry and David that the terms of the Customer Agreement applied to Harry and David's purchase of hardware, programs, and related licenses for the E-commerce Programs.

24.    The Customer Agreement governed each of Harry and David's purchases and use of the E-commerce Programs.

**MARSHALL TEXAS**

25.    The U.S. District Court for the Eastern District of Texas in Marshall Texas ("Marshall") has an established reputation for quick patent trials and plaintiff friendly juries (See attached Ex. A.)

26.    As of 2006, patent holders won patent suits in Marshall approximately 78 percent of the time, compared with an average of 59 percent nationwide.

/ / / /

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
Page 4**

27.    Patent cases are also heard faster in Marshall than in many other courts and is referred to colloquially as a "rocket-docket."

28.    As a result, many patent holders elect to file suit for patent infringement in Marshall.

29.    Marshall's accelerated schedule for discovery requires corporate defendants to begin spending money early and often to mount a meaningful defense.

## CHARLES E. HILL & ASSOCIATES V. IBM

30.    In 2002, Charles E. Hill & Associates ("Hill") filed suit in Marshall against IBM ("the Hill Litigation") for, *inter alia*, infringing on several U.S. Patents belonging to Hill through IBM's operation of its website and through IBM's creation and licensing of the E-commerce Programs.  On November 8, 2002, IBM filed its answer, affirmative defenses, and counterclaims against Hill in that case.

31.    Specifically, Hill owns U.S. Patent Nos. 5,528,490, 5,761,649, and 6,029,142 (collectively "the Hill Patents").  The Hill Patents generally relate to an electronic catalog system that employs a unique "caching" mechanism to communicate information between computers.

32.    IBM infringed on the Hill and other patents in its creation and licensing of the E-commerce Programs.

33.    By November 2002, IBM knew that it had infringed Hill's Patents and would eventually need a license to use and sell Hill's invention embodied in IBM's E-commerce product offerings.

34.    IBM sold the E-commerce Programs to its customers, such as Harry and David.  Unbeknownst to Harry and David and other IBM customers, the E-commerce Programs were based upon the same technology IBM used for its own website and infringed upon the Hill and other patents.

/ / / /

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
Page 5**

35.    On November 30, 2004, Hill filed and served IBM with its Preliminary Infringement Contentions in the Hill Litigation, which enumerated the ways in which IBM's website and IBM's E-commerce Programs infringed the Hill Patents.

## THE NCR PATENTS

36.    NCR Corporation ("NCR") is the owner of U.S. Patent Nos. 5,699,526; 5,951,643; 5,991,791; 6,026,403; 6,169,997; 6,253,203; 6,334,110; 6,480,855; and 6,502,096 (collectively "the NCR Patents").

37.    The NCR Patents generally relate to the operation of electronic catalogs.

38.    IBM infringed the NCR and other patents in its creation and licensing of the E-commerce Programs.

39.    Upon information and belief, IBM became aware of the NCR Patents by 2002 and entered into a licensing agreement to use NCR's technology at some later date.

40.    However, IBM did not disclose to Harry and David or any of its customers that any use of the E-commerce Programs would require a license from NCR to operate them.

## IBM'S CONTINUED MARKETING AND SALES OF THE
## E-COMMERCE PROGRAMS

41.    Despite IBM's knowledge that the E-commerce Programs infringed on the Hill, the NCR, and other patents, and despite its involvement in the Hill Litigation, IBM continued to market the E-commerce Programs to the general public.  IBM specifically marketed the E-commerce Programs as having been recognized as a leader in e-commerce by leading analysts and by more than 1000 customers such as REI, Williams-Sonoma, Abercrombie and Fitch, and Staples.

42.    In addition to its general marketing efforts, IBM specifically marketed another upgrade to Harry and David.  In late 2004, IBM notified Harry and David that IBM had

/ / / /

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY
TRIAL
Page 6**

eliminated standard support for the version of the E-commerce Programs that Harry and David had been using. IBM offered Websphere 5.6 as an essential upgrade.

43.    On September 14, 2004, IBM's Director of World Wide Marketing for Websphere Commerce, Steve Mello, made certain promises both verbally and through power point presentations regarding Websphere 5.6 to Harry and David representatives at Harry & David's headquarters in Medford, Oregon. These representations included, but were not limited to, the following:

a.    That IBM would provide the "entire solution" through software, hardware, services, and industry expertise.

b.    That Websphere 5.6 was a "complete, end-to-end solution that addresses the entire value chain."

c.    That Websphere 5.6 was "integrated and in-the-box with no third party dependence."

44.    On September 14, 2004, IBM's Program Director of Software Services for Websphere, Manny Amorim, promised both verbally and through power point presentations to Harry and David representatives at Harry & David's headquarters in Medford, Oregon that Websphere 5.6 provided a "lower total cost of ownership" through a "single integrated platform."

45.    On October 26, 2004, IBM's Program Director of Software Services for Websphere, Manny Amorim, made certain promises both verbally and through power point presentations regarding Websphere 5.6 to Harry and David representatives at Harry & David's headquarters in Medford, Oregon. These representations included, but were not limited to, the following:

a.    That Websphere 5.6 would "reduce the cost" of Harry and David's operation of its online catalog.

/ / / /

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
Page 7**

b. That IBM would provide the "entire solution" through software, hardware, services, and industry expertise.

c. That Websphere 5.6 was a "complete, end-to-end solution that addresses the entire value chain."

d. That Websphere 5.6 was "integrated and in-the-box with no third party dependence."

46.     On October 26, 2004, IBM provided Harry and David at Harry and David's headquarters in Oregon with a document entitled "Bear Creek Operations (BCO) e-Commerce Migration to Websphere 5.6: Assessment, Estimate and Recommendations."  In that document, IBM further represented in writing that "based on both recent advances in technology/standards" and Websphere 5.6 functionality, there is an opportunity to leverage Websphere 5.6 "out-of-the-box" functionality to enhance Harry and David's ability "to increase sales through the e-Commerce sites as well as obtaining better operation efficiency by exploiting the available state of the art caching technology."

47.     IBM and Harry and David subsequently began negotiations for Harry and David's purchase of Websphere 5.6.

48.     At the time of these negotiations, IBM was fully aware that the E-commerce Programs infringed on the Hill, the NCR, and other patents and that Harry and David would be liable for patent infringement by using the E-commerce Programs.

49.     In fact, IBM knew or should have known that Hill intended to embark on a campaign to sue IBM's customers for patent infringement for their use of the E-commerce Programs.  Hill initially sued IBM and other sophisticated e-commerce companies for infringement of the Hill Patents, knowing that if the Hill Patents withstood the arguments asserted by these companies, they would be respected by other smaller e-commerce companies, such as Harry and David.  Indeed, Microsoft, IBM's leading competitor, recently intervened in one of Hill's patent suits in Marshall to protect its customers.  At no time

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
Page 8

during its negotiations with Harry and David did IBM disclose to Harry and David that the E-commerce Programs infringed upon the Hill, the NCR or other Patents, that IBM was involved in the Hill Litigation, or that Hill intended to sue IBM's customers for their use of the E-commerce Programs.

50.    In order to make the E-commerce Programs operable, IBM representatives were required to install them on Harry and David's existing business computer system.  This installation is standard for the purchase of the E-commerce Programs.

51.    Prior to purchase and installation of Websphere 5.6, IBM would require Harry and David to enter into IBM's Statement of Work for E-commerce Upgrade ("the Statement of Work").

52.    IBM's initial version of the Statement of Work specifically disclaimed any liability for patent infringement for Harry and David's purchase and use of Websphere 5.6.

53.    On November 23, 2004, during negotiations for Harry and David's purchase of Websphere 5.6, Harry and David's Vice President and General Counsel Robert Bluth deleted IBM's disclaimer of liability for patent infringement and attempted to add a provision to IBM's proposed Statement of Work that provided Harry and David with indemnity for patent infringement for its purchase and use of Websphere 5.6.  Between November 23, 2004 and December 21, 2004, IBM's legal department removed Harry and David's proposed revision and various IBM representatives informed Mr. Bluth by telephone, while Mr. Bluth was at Harry and David's headquarters in Medford, Oregon, that the Indemnity Clause of the Customer Agreement would apply to indemnify Harry and David for any patent infringement caused by Harry and David's use of Websphere 5.6.

54.    From November 23, 2004 through August 2005, IBM continually made this same representation to Mr. Bluth over the telephone, while Mr. Bluth was at Harry and David's headquarters in Medford, Oregon.

/ / / /

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
Page 9

55.     On December 21, 2004, IBM provided Harry and David with a revised Statement of Work, which omitted IBM's disclaimer of liability for patent infringement and specifically provided that the terms of the Customer Agreement would apply to the Statement of Work.

56.     On December 23, 2004, Harry and David purchased Websphere 5.6 and Harry and David and IBM signed IBM's Statement of Work.

57.     The E-commerce Programs, infringed on the Hill, the NCR, and other patents at the time they were delivered to Harry and David.  Moreover, the E-commerce Programs, as installed by IBM, could only be used in a manner that infringed upon the Hill, the NCR, and other patents.

58.     Harry and David was wholly unaware that the E-commerce Programs infringed upon the Hill, the NCR, and other patents at the time that it purchased the E-commerce Programs from IBM.

59.     After entering into the Statement of Work, IBM representatives installed Websphere 5.6 on Harry and David's existing business computer system.

60.     IBM did not alter the basic method in which the E-commerce Programs functioned according to any specifications provided by Harry and David.

61.     IBM had the ability to install the E-commerce Programs, including Websphere 5.6, to include an option that would have modified the E-commerce Programs so as not to infringe on the Hill, the NCR, and other patents.

62.     IBM knew of this option, but did not exercise it and failed to inform Harry and David of its existence.

63.     Harry and David has operated the E-commerce Programs in the method specified by IBM since the time that IBM installed them on Harry and David's computer system.

/ / / /

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**
**Page 10**

64.     On the eve of trial in the Hill Litigation, IBM and Hill entered into a settlement agreement regarding Hill's claims against IBM for infringement of the Hill Patents.

65.     On information and belief, the settlement agreement between Hill and IBM permitted Hill to sue IBM's customers for patent infringement for their use of the E-commerce Programs.

66.     Despite IBM's knowledge that its infringement could subject Harry and David to claims for patent infringement, and despite its knowledge that Hill in fact intended to sue IBM's customers for their use of the E-commerce Programs, IBM took no action to protect Harry and David from Hill's lawsuit or to inform Harry and David of the potential of a Hill suit.

67.     Rather, IBM shortly began marketing another upgrade to Harry and David, representing that IBM was discontinuing service for Websphere 5.6.

## NCR'S CLAIMS AGAINST HARRY AND DAVID

68.     On June 13, 2005, NCR notified Harry and David that Harry and David's use of the E-commerce Programs infringed on the NCR Patents.

69.     Harry and David then notified IBM of NCR's claims and sought a defense and indemnity from IBM pursuant to the Customer Agreement.

70.     IBM refused to provide a defense.

71.     IBM refused to indemnify Harry and David.

72.     IBM also refused to provide Harry and David with help or information on how to defend against NCR's claims for infringement.

73.     IBM also refused to provide Harry and David with any explanation as to why the E-commerce Programs did not infringe on the NCR Patents.

/ / / /

/ / / /

**Bullivant|Houser|Bailey PC**

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
Page 11**

74.     IBM also asserted that it had a license available for the use of NCR's technology, but IBM refused to offer Harry and David a license allowing Harry and David to use the E-commerce Programs without infringing on the NCR Patents.

75.     Harry and David ultimately settled with NCR by purchasing a license to use NCR's technology on June 26, 2006.

76.     IBM refused to pay Harry and David's settlement with NCR.

77.     IBM refused to pay Harry and David's expenses associated with defending and settling the NCR infringement claims.

### CHARLES E. HILL & ASSOCIATES V. HARRY & DAVID

78.     On June 7, 2007, Hill filed a complaint against Harry and David in Marshall, alleging that Harry and David's use of the E-commerce Programs infringed upon the Hill Patents.

79.     On July 16, 2007, Harry and David formally tendered Hill's claims to IBM for defense and indemnification pursuant to the Indemnity Clause of the Customer Agreement.

80.     IBM spent the next five months formulating various responses to this tender ranging from:

    a.     IBM does not know whether there is indemnity coverage for patent infringement; to,

    b.     IBM has no indemnity obligation to Harry and David for claims of patent infringement; to,

    c.     Harry and David has indemnity rights for patent infringement, but does not qualify for coverage for infringement of the Hill Patents.

81.     Meanwhile, the rocket-docket in Marshall and Hill's aggressive litigation accelerated the patent infringement case, requiring Harry and David to take steps to mitigate the losses caused by IBM's failure to sell Harry and David E-commerce products that did not infringe the Hill Patents.

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**
**Page 12**

82.    IBM refused to provide Harry and David with help or information on how to defend against Hill's claims for infringement.

83.    IBM refused to provide Harry and David with any explanation as to why the E-commerce Programs did not infringe on the Hill Patents.

84.    IBM refused to offer Harry and David a license allowing Harry and David to use the E-commerce Programs without infringing on the Hill Patents.

85.    Harry and David incurred legal expenses associated with defending itself in Marshall and ultimately reached settlement with Hill.

86.    IBM refused to defend and indemnify Harry and David pursuant to the Customer Agreement.

87.    On November 19, 2007, at approximately 8:35 a.m. Pacific Time, after Harry and David settled with Hill, IBM's in-house counsel Paul Bercow reaffirmed to Mr. Bluth by telephone, while Mr. Bluth was at Harry and David's headquarters in Medford, Oregon, that the Customer Agreement and its indemnity provision in fact governs Harry and David's purchase of the E-commerce Programs and that Harry and David would be entitled to indemnity.

88.    IBM continues to refuse to reimburse Harry and David for all of the expenses that it incurred to defend against and settle Hill's infringement claims.

**FIRST CLAIM FOR RELIEF**

**(Declaratory Judgment – 28 U.S.C. § 2201)**

89.    Harry and David realleges paragraphs 1 through 88 as if fully stated herein.

90.    Harry and David has tendered Hill's and NCR's claims to IBM for defense and indemnification pursuant to the Indemnity Clause of the Customer Agreement.

91.    IBM has refused to defend and indemnify Harry and David pursuant to the Customer Agreement.

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
Page 13**

92.    An actual and substantial controversy exists between the parties concerning Harry and David's right to indemnity under the Customer Agreement for Harry and David's infringement of the Hill, the NCR, and other patents resulting from Harry and David's purchase and use of the E-commerce Programs.

93.    The parties' interests are adverse, and this controversy is of sufficient immediacy and reality to require a declaratory judgment.

94.    For the reasons set forth herein, Harry and David seeks a declaratory judgment under 28 U.S.C. § 2201 that 1) IBM is responsible for paying all expenses, costs, attorney fees, and amounts associated with Harry and David's alleged infringement of the Hill Patents and the NCR Patents resulting from Harry and David's purchase and use of the E-commerce Programs, and 2) IBM is responsible for paying all expenses, costs, attorney fees, and amounts associated with claims by other patent holders who claim that IBM's products and programs purchased by Harry and David infringe their respective rights.

## SECOND CLAIM FOR RELIEF

### (Breach of Warranty Against Infringement – NY UCC 2-312 )

95.    Harry and David realleges paragraphs 1 through 88 as if fully stated herein.

96.    Harry and David entered into contracts with IBM for the sale of licenses to use the E-commerce Programs in exchange for valuable consideration.

97.    IBM is a merchant dealing in goods of the same kind as the E-commerce Programs, since the E-commerce Programs were part of IBM's normal products and were sold in IBM's normal course of business at the time that they were delivered to Harry and David.

98.    IBM did not create or modify the E-commerce Programs according to any specifications provided by Harry and David.  Harry and David operated the E-commerce Programs in the method specified by IBM.

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY
TRIAL
Page 14**

99.    By contracting to sell the E-commerce Programs to Harry and David, IBM implicitly warranted that the E-commerce Programs would be delivered to Harry and David free of patent infringement claims.

100.    IBM breached this warranty because the E-commerce Programs infringed on the Hill, the NCR, and other patents at the time of delivery. Moreover, the E-commerce Programs, as installed by IBM, could only be used for the intended purpose in a manner that infringed upon the Hill, the NCR, and other patents.

101.    As a result of IBM's breach and the special circumstances surrounding it, Harry and David is entitled to damages in an amount to be determined at trial, but in any event, not less than $1,000,000.

### THIRD CLAIM FOR RELIEF

#### (Breach of Contract – Customer Agreement)

102.    Harry and David realleges paragraphs 1 through 88 as if fully stated herein.

103.    Harry and David entered into the Customer Agreement with IBM for valuable consideration.

104.    The E-commerce Programs are warranted IBM hardware and software.

105.    The Customer Agreement provides that in the event that a third party claims that an IBM product infringes upon that party's patent, IBM will defend Harry and David against that claim at IBM's expense and pay all costs, damages, and attorney fees that a court finally awards or that are included in a settlement approved by IBM.

106.    The Customer Agreement provides that IBM warrants that it has the right to license the E-commerce Programs.

107.    The Customer Agreement further provides that Harry and David will only be required to pay for the E-commerce Programs once.

108.    IBM breached the Customer Agreement because the E-commerce Programs infringe on the Hill, the NCR, and other patents, IBM refused to provide a license that

**Bullivant|Houser|Bailey PC**

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**
**Page 15**

covered the E-commerce Programs, IBM refused to defend Harry and David against Hill's and NCR's claims for patent infringement, and IBM refused to pay the costs, damages, and attorney fees that Harry and David has paid in connection with Hill's and NCR's claims.

109.    IBM breached the Customer Agreement because it did not have the right to sell the E-commerce Programs.

110.    IBM also breached the Customer Agreement because Harry and David was required to pay Hill and NCR for licenses to use the E-commerce Programs, thereby causing Harry and David to pay for the E-commerce Programs three times.

111.    Harry and David has fully performed its obligations under the Customer Agreement.

112.    As set forth in Harry and David's fifth and sixth claims for relief, Harry and David reasonably relied on IBM's misrepresentations and its failures to disclose material information concerning the E-Commerce programs.  Moreover, Harry and David changed its position to its detriment and prejudice by purchasing the E-commerce programs. Accordingly, IBM is estopped from disclaiming any terms of the Customer Agreement.

113.    As a result of IBM's breach, Harry and David has suffered damages in an amount to be determined at trial, but in any event, not less than $1,000,000.

## FOURTH CLAIM FOR RELIEF

### (Breach of Duty of Good Faith and Fair Dealing)

114.    Harry and David realleges paragraphs 1 through 88 as if fully stated herein.

115.    The Customer Agreement included an implied duty of good faith and fair dealing.

116.    Harry and David conducts a large portion of its sales on the internet.

/ / / /

/ / / /

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**
**Page 16**

117.    Harry and David reasonably expected that IBM would provide it with an internet based catalog that Harry and David could use in conducting internet sales of its products.

118.    Harry and David reasonably expected that IBM would own and have the right to license the E-commerce Programs, as represented in the Customer Agreement.

119.    Harry and David reasonably expected that IBM would indemnify Harry and David under the Customer Agreement for any third party claims for patent infringement in connection with the E-commerce Programs.

120.    Harry and David reasonably expected that it would pay for a license to use the E-commerce Programs only once.

121.    IBM was aware of and understood Harry and David's reasonable expectations. IBM violated these expectations and acted in bad faith by:

    a.    providing Harry and David with an infringing product that subjected Harry and David to Hill's lawsuit and NCR's claims;

    b.    installing the E-commerce programs in a way that would cause Harry and David to infringe on the Hill, the NCR, and other patents despite IBM's ability to avoid such a result;

    c.    failing to disclose that the E-commerce Programs infringed the Hill, the NCR, and other patents to Harry and David;

    d.    failing to disclose the fact that IBM was involved in the Hill litigation,

    e.    failing to disclose that Hill intended to sue IBM's customers for patent infringement for their use of the E-commerce Programs;

    f.    refusing to provide Harry and David with help or information on how to defend against Hill's and NCR's claims for patent infringement;

    g.    refusing to provide Harry and David with any explanation as to why the E-commerce Programs did not infringe on the Hill and NCR Patents;

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
Page 17

h.  refusing to offer Harry and David a license allowing Harry and David to use the E-commerce Programs without infringing on the Hill and NCR Patents;

i.  failing and refusing to defend and indemnify Harry and David against Hill's and NCR's claims for patent infringement; and,

j.  causing Harry and David to pay for the E-commerce Programs licenses three times through Harry and David's settlement agreements with Hill and NCR.

122.  Through these actions, IBM breached its implied duty of good faith and fair dealing to Harry and David.

123.  As a result of IBM's acts, Harry and David has been deprived of the benefit of its contracts with IBM and has suffered damages in an amount to be determined at trial, but in any event, not less than $1,000,000.

## FIFTH CLAIM FOR RELIEF

### (Fraud – Misrepresentation)

124.  Harry and David realleges paragraphs 1 through 88 as if fully stated herein.

125.  IBM falsely represented in the 1991 Customer Agreement that it had the right to license the E-commerce Programs.

126.  On September 14, 2004, IBM's Program Director of Software Services for Websphere, Manny Amorim misrepresented both verbally and through power point presentations to Harry and David's representatives at Harry and David's headquarters in Medford, Oregon that Websphere 5.6 provided a "lower total cost of ownership" through a "single integrated platform."  On October 26, 2004, Amorim similarly misrepresented both verbally and through power point presentations to Harry and David's representatives at Harry

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
Page 18**

and David's headquarters, that Websphere 5.6 would "reduce the cost" of Harry and David's operation of its online catalog.

127.    On September 14, 2004, IBM's Director of World Wide Marketing for Websphere Commerce, Steve Mello, verbally and through power point presentations, misrepresented to Harry and David at Harry and David's headquarters in Medford, Oregon that IBM would provide the "entire solution" through software, hardware, services, and industry expertise. On October 26, 2004, Manny Amorim, made this same misrepresentation both verbally and through power point presentations to Harry and David representatives at Harry and David's headquarters.

128.    On September 14, 2004, Steve Mello, verbally and through power point presentations, misrepresented to Harry and David representatives at Harry and David's headquarters in Medford, Oregon that Websphere was "a complete, end-to-end solution that addresses the entire value chain." On October 26, 2004, Manny Amorim made this same misrepresentation both verbally and through power point presentations to Harry and David representatives at Harry and David's headquarters.

129.    On September 14, 2004, Steve Mello, verbally and through power point presentations, misrepresented to Harry and David representatives at Harry and David's headquarters in Medford, Oregon that Websphere was "integrated and in-the-box with no third-party dependence." On October 26, 2004, Manny Amorim made this same misrepresentation both verbally and through power point presentations to Harry and David representatives at Harry and David's headquarters.

130.    On October 26, 2004, IBM misrepresented in writing in its "Bear Creek Operations (BCO) e-Commerce Migration to Websphere Commerce 5.6 Assessment, Estimate and Recommendations" that it had the right to exploit the available state of the art caching technology.

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY
TRIAL
Page 19**

131.    Between November 23 and December 19, 2004, IBM misrepresented over the telephone to Harry and David's Vice President and General Counsel Robert Bluth, while Mr. Bluth was at Harry and David's headquarters in Medford, Oregon that it would honor and apply the Customer Agreement to Harry and David's purchase and use of the E-commerce Program licenses and specifically that the Indemnity Clause of the Customer Agreement applied to Harry and David's purchase and use of the Websphere 5.6 license.  From November 23, 2004 through August 2005, IBM continually made this same representation to Mr. Bluth over the telephone, while Mr. Bluth was at Harry and David's headquarters in Medford, Oregon.

132.    On December 21, 2004, IBM again made this misrepresentation by providing Harry and David with a new version of IBM's Statement of Work that omitted IBM's initial disclaimer of liability for patent infringement and instead incorporated the terms of the Customer Agreement, including its Indemnity Provision.

133.    IBM intentionally made these false representations with the intent to deceive Harry and David and to induce Harry and David to purchase the E-commerce Programs.

134.    IBM in fact did not have the right to license the E-commerce Programs, as they infringed on the Hill, the NCR, and other patents at the time IBM issued them.

135.    Websphere 5.6 in fact did not provide a lower total cost of ownership or reduce Harry and David's cost to operate its online catalog, as Harry and David were required to purchase licenses to use the E-commerce Programs three times.

136.    IBM in fact did not provide the "entire solution" through software, hardware, services, and industry expertise, as Harry and David was required to purchase additional licenses to operate the E-commerce Programs.

137.    Websphere 5.6 in fact was not a "complete, end-to-end solution that address[ed] the entire value chain," as Harry and David was required to purchase additional licenses to operate the E-commerce Programs.

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
Page 20**

138.    Websphere 5.6 in fact was not "integrated and in-the-box with no third party dependence," as Harry and David was required to purchase additional licenses from Hill and NCR to operate the E-commerce Programs.

139.    IBM in fact did not have the right to exploit the referenced caching technology, as that technology infringed on the Hill, NCR, and other patents.

140.    IBM in fact would not honor and apply the terms of the Customer Agreement, as it rejected Harry and David's tender of Hill's and NCR's claims for patent infringement.

141.    IBM knew of the true facts concerning these matters stated herein.

142.    In light of IBM's general reputation, IBM's knowledge of the technology underlying the E-commerce Programs, and the general requirement that parties to a contract negotiate in good faith, Harry and David justifiably relied on IBM's representations.  Except for these representations, Harry and David would not have purchased the E-commerce Programs.

143.    As a result of IBM's intentional conduct, Harry and David has suffered damages in an amount to be proven at trial, but in any event, not less than $1,000,000.

144.    IBM's conduct was willful, wanton, and malicious and warrants punitive damages in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF

### (Fraud – Omission)

145.    Harry and David realleges paragraphs 1 through 88 as if fully stated herein.

146.    IBM failed to disclose and concealed material facts including, but not limited to, the fact that the E-commerce Programs infringed on the Hill, the NCR, and other patents, the fact that IBM did not have a licenses to use the Hill technology and instead needed to obtain such license, the fact that IBM was involved in the Hill Litigation, and the fact that Hill intended to sue IBM's customers for their use of the E-commerce Programs.

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY
TRIAL
Page 21**

147.    IBM had a duty to disclose this information.  IBM had superior knowledge of and knew of the true facts concerning this information.  This information was not readily available to Harry & David, as it was within IBM's possession and control.

148.    IBM intentionally failed to disclose and concealed this information with the intent to deceive Harry and David and induce it to purchase the E-commerce Programs.

149.    In light of IBM's general reputation, IBM's knowledge of the technology underlying the E-commerce Programs, and the general requirement that parties to a contract negotiate in good faith, Harry and David justifiably relied on the fact that IBM would fulfill its obligation to disclose the material facts listed in paragraph 145.

150.    Except for IBM's failure to disclose this information, Harry and David would not have purchased the E-commerce Programs, including Websphere 5.6.

151.    IBM knew that Harry and David was acting on the basis of Harry & David's mistaken knowledge.

152.    As a result of IBM's intentional conduct, Harry and David has suffered damages in an amount to be proven at trial, but in any event, not less than $1,000,000.

153.    IBM's conduct was willful, wanton, and malicious and warrants punitive damages in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF

### (Common Law Indemnification)

154.    Harry and David realleges paragraphs 1 through 88 as if fully stated herein.

155.    IBM owed a duty to Harry and David to sell it products that did not infringe on third-party patents.  IBM breached this duty by creating the E-commerce Programs, which infringed the Hill, the NCR, and other patents, and then selling the E-commerce Programs to Harry and David.

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY
TRIAL
Page 22**

156.    IBM owed a duty to Harry and David to disclose the fact that the E-commerce Programs infringed the Hill, the NCR, and other patents, which IBM has breached by failing to disclose and concealing this fact from Harry and David.

157.    IBM owed a duty to Harry and David to disclose the fact that Hill intended to sue IBM's customers for their use of the E-commerce Programs, which IBM has breached by failing to disclose and concealing this fact from Harry and David.

158.    Harry and David was induced to act only by IBM's misrepresentations and failure to disclose material information concerning IBM's infringement of the Hill, NCR, and other patents.  In light of IBM's general reputation, IBM's knowledge of the technology underlying the E-commerce Programs, and the general requirement that parties to a contract negotiate in good faith, Harry and David justifiably relied on IBM's misrepresentations and omissions.

159.    There is a great disparity in the fault of IBM and Harry and David for Harry and David's infringement of the Hill, the NCR, and other patents.  Harry and David's infringement of these patents is directly due to IBM's infringement of these patents in the creation and sale of the E-commerce Programs.  IBM's infringement was primary and active while any infringement by Harry and David was unknown and merely secondary and passive.

160.    As between Hill, NCR, and Harry and David, Hill's and NCR's damages were the responsibility of IBM, as IBM's creation and sale of the E-commerce Programs is the primary and active cause of Hill's and NCR's damages.  Harry and David has paid for these losses, and IBM is liable to Harry and David for the expenses it incurred to defend against and settle the Hill and NCR claims.  Harry and David has been damaged by IBM's conduct in an amount to be determined at trial, but in any event, not less than $1,000,000.

/ / / /

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**
**Page 23**

WHEREFORE, Harry and David respectfully requests that judgment in its favor and against defendant IBM be entered as follows:

A.    For its First Claim for Relief, that this Court make a declaratory judgment that that: 1) IBM is responsible for paying all expenses, costs, attorney fees, and amounts associated with Harry and David's alleged infringement of the Hill Patents and the NCR Patents resulting from Harry and David's purchase and use of the E-commerce Programs; and, 2) IBM is responsible for paying all expenses, costs, attorney fees, and amounts associated with claims by other patent holders who claim that IBM's products and programs purchased by Harry and David infringe their respective rights;

B.    For its Second Claim for Relief, that Harry and David be awarded its damages for IBM's breach of the warranty against infringement in amounts to be proven at trial, but in any event, not less than $1,000,000;

C.    For its Third Claim for Relief, that Harry and David be awarded its actual and consequential damages for IBM's breach of the Customer Agreement in amounts to be proven at trial, but in any event, not less than $1,000,000;

D.    For its Fourth Claim for Relief, that Harry and David be awarded its actual and consequential damages for IBM's breach of the duty of good faith and fair dealing in amounts to be proven at trial, but in any event, not less than $1,000,000;

/ / / /

/ / / /

/ / / /

**Bullivant|Houser|Bailey PC**

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
Page 24**

E.    For its Fifth Claim for Relief, that Harry and David be awarded its actual and consequential damages for IBM's fraudulent misrepresentation in amounts to be proven at trial, but in any event, not less than $1,000,000, plus punitive damages;

F.    For its Sixth Claim for Relief, that Harry and David be awarded its actual and consequential damages for IBM's fraudulent omission in amounts to be proven at trial, but in any event, not less than $1,000,000, plus punitive damages;

G.    For its Seventh Claim for Relief, that IBM indemnify Harry and David for the monetary amounts it paid to Hill and NCR for patent infringement, together with Harry and David's reasonable attorney fees and costs incurred in defending against Hill's and NCR's claims in an amount to be proven at trial, but in any event, not less than $1,000,000;

H.    For prejudgment and post-judgment interest at the statutory rate from the date the damages were incurred; and,

I.    That Harry and David be awarded other and further relief as the Court deems just and appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Harry and David demands a trial by jury on all issues so triable.

DATED this 28th day of May, 2008.

BULLIVANT HOUSER BAILEY PC


BY /S/ Stephen Deatherage For Chad Colton
**Renée E. Rothauge,** OSB #903712
**Chad M. Colton,** OSB #065774
Telephone: 503.228.6351
Attorneys for Plaintiffs Harry and David and Harry and David Operations, Inc.

**Bullivant|Houser|Bailey PC**

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
Page 25**

## CERTIFICATE OF SERVICE

I, Chad M. Colton, hereby certify that on May 28, 2008, the foregoing SECOND

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL was served on the defendant

by delivering to defendant's attorney's office by the method indicated below and by process

service on the Registered Agent for International Business Machines Corporation.

Doug Colt                                                      Via Email and U.S. Mail
Quinn Emanuel Urquhart Oliver & Hedges, LLP
555 Twin Dolphin Dr., Ste. 560
Redwood Shores, CA  94065

dougcolt@quinnemanuel.com



BULLIVANT HOUSER BAILEY
A Professional Corporation



By  /s/ Stephen Deatherage for Chad Colton
        **Chad M. Colton,** OSB #065774

Attorneys for Harry and David

10573592.1

**Bullivant|Houser|Bailey PC**

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY
TRIAL
Page 1**