**Renée E. Rothauge**, OSB #903712
E-mail: renee.rothauge@bullivant.com
**Chad M. Colton**, OSB #065774
E-mail: chad.colton@bullivant.com
BULLIVANT HOUSER BAILEY PC
300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon  97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

**Robert E. Bluth**, OSB #902111
E-mail: bbluth@harryanddavid.com
HARRY AND DAVID
PO Box 299
Medford, Oregon  97501-0299
Telephone: (541) 864-2525
Facsimile: (541) 864-2885
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| HARRY AND DAVID, an Oregon corporation; and HARRY AND DAVID OPERATIONS, INC., a Delaware corporation,<br><br>        Plaintiffs,<br><br>   v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION, a New York corporation,<br><br>        Defendant. | Civil No.: 1:08-CV-00235-PA<br><br>**HARRY AND DAVID'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**<br><br>**REQUEST FOR ORAL ARGUMENT** |

# TABLE OF CONTENTS

I. INTRODUCTION ...........................................................................................................1

II. FACTUAL BACKGROUND ........................................................................................1

III. LEGAL STANDARD ..................................................................................................4

IV. ARGUMENT ...............................................................................................................5

    A. Harry and David's claims for common law indemnity and breach of the
    warranty of noninfringement are alternative theories of relief. ...............................5

    B. Harry and David is not required to allege a "special relationship" to state a
    claim for common law indemnity. ...........................................................................8

    C. Harry and David has stated a fraud claim. ...........................................................9

        1. IBM's deliberate use of misrepresentations and material omissions
        to deceive Harry and David and induce it to purchase IBM's
        software constitutes "scienter." ...................................................................9

        2. Harry and David's fraud claims are independent of its claim for
        breach of contract. .....................................................................................12

        3. IBM's fraudulent statements do not qualify as mere commercial
        "puffery." ...................................................................................................17

    V. CONCLUSION ..........................................................................................................20

**Bullivant|Houser|Bailey PC**

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**HARRY AND DAVID'S RESPONSE TO DEFENDANT'S MOTION
TO DISMISS
Page i**

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abbate v. Abbate,*
  82 A.D.2d 368, 441 N.Y.S.2d 506 (N.Y. App. 1981)................................................9

*American Home Assur. Co. v. Gemma Const. Co.*, Inc., 275 A.D.2d 616, 713 N.Y.S.2d 48
  (N.Y. App. 2000) ......................................................................................9

*Augsbury v. Adams,*
  135 A.D.2d 941, 522 N.Y.S.2d 691 (N.Y. Sup. 1987) ......................................18

*Bd. of Educ. of Hudson City School Dist. v. Sargent, Webster, Crenshaw & Foley,*
  146 A.D.2d 190, 539 N.Y.S.2d 814 (N.Y. App. 1989)........................................9

*Bonfield v. AAMCO Transmissions, Inc.,*
  708 F. Supp. 876 (N.D. Ill. 1989) ..................................................................5

*Channel Master Corp. v. Aluminum Limited Sales, Inc.,*
  4 N.Y.2d 403, 151 N.E.2d 833, 176 N.Y.S.2d 259 (N.Y. 1958).........................11

*Cirillo v. Slomin's Inc.,*
  196 Misc.2d 922, 768 N.Y.S.2d 759 (N.Y. Sup. 2003) .....................................11

*City of New York v. Lead Industries Ass'n, Inc.,*
  190 A.D.2d 173, 597 N.Y.S.2d 698 (N.Y. App. 1993)..................................17, 18

*Commodity Futures Trading Com'n v. Vartuli,*
  228 F.3d 94 (2d Cir. 2000) ..........................................................................12

*Conley v. Gibson,*
  355 U.S. 41 (1957)........................................................................................5

*Conversion Corp. v. Cedar Bldg. Corp.,*
  23 N.Y.2d 621, 298 N.Y.S.2d 499 (N.Y. 1969) ...............................................9

*Cooper v. Pickett,*
  137 F.3d 616 (9th Cir. 1997) ........................................................................4

*Crowley v. Marine Assocs. v. Nycomm Assocs., L.P.,*
  292 A.D.2d 334 (N.Y. App. 2002) .................................................................13

*Davis v. Dime Savings Bank of New York, FSB,*
  158 A.D.2d 50, 557 N.Y.S.2d 775 (N.Y. App. 1990)........................................13

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**HARRY AND DAVID'S RESPONSE TO DEFENDANT'S MOTION
TO DISMISS
Page ii**

*Deutsch v. Flannery,*
    823 F.2d 1361 (9th Cir. 1987) .................................................................5

*Dorfman Organization, Ltd. v. Greater New York Mut. Ins. Co.,*
    279 A.D.2d 437, 719 N.Y.S.2d 573 (N.Y. App. 2001).......................................19

*First Bank of the Americas v. Motor Car Funding, Inc.,*
    257 A.D.2d 287, 690 N.Y.S.2d 17 (N.Y. App. 1999).............................. 13, 15, 16

*Fromer v. Yogel,*
    50 F.Supp.2d 227 (S.D.N.Y. 1999).................................................................8

*Hadcock v. Osmer,*
    153 N.Y. 604, 47 N.E. 923 (N.Y. 1897) ...........................................................12

*Houbigant, Inc. v. Deloitte & Touche LLP,*
    303 A.D.2d 92, 743 N.Y.S.2d 493 (N.Y. App. 2003).........................................9

*In re GlenFed, Inc. Sec. Litig.,*
    42 F.3d 1541 (9th Cir. 1994) ........................................................................5

*Mandelblatt v Devon Stores,*
    132 A.D.2d 162, 521 N.Y.S.2d 672 ................................................................13

*MBW Advertising Network, Inc. v. Century Business Credit Corp.,*
    173 A.D.2d 306, 569 N.Y.S.2d 682 (N.Y. App. 1991).....................................13, 14

*McCalden v. Calif. Library Ass'n,*
    955 F.2d 1214 (9th Cir. 1990) .......................................................................6

*McDermott v. City of New York,*
    50 N.Y.2d 211, 406 N.E.2d 460 (N.Y. 1980).................................................8, 17

*MDCM Holdings, Inc. v. Credit Suisse First Boston Corp.,*
    216 F.Supp.2d 251 (S.D.N.Y. 2002).............................................................6, 7

*Navarro v. Block,*
    250 F.3d 729 (9th Cir. 2001) .........................................................................4

*Nye v. A/S/D/S Svendborg,*
    501 F.2d 376 (2d Cir. 1974) ..........................................................................8

*People's Democratic Rep. of Yemen v. Goodpasture Inc.*
    782 F.2d 346, 351 (2d Cir. 1986)....................................................................8

*Small v. Lorilland Tobacco Co., Inc.,*
    94 N.Y.2d 43, 720 N.E.2d 892 (N.Y. 1999).....................................................9

**HARRY AND DAVID'S RESPONSE TO DEFENDANT'S MOTION
TO DISMISS
Page iii**

*Sutton Associates v. Lexis Nexis*,
    196 Misc.2d 30, 761 N.Y.S.2d 800 (N.Y. Sup. 2003) ........................................................ 18

*Swedish Civ. Aviation Admin. v. Project Mgmt. Enters., Inc.*,
    190 F. Supp.2d 785 (D. Md. 2002) .................................................................................... 5

*Technical Support Services Inc. v. Int'l Bus. Machines, Corp.*,
    2007 WL 4500382 (N.Y. Sup. Ct. 2007) .................................................................... 10, 11

*Washington v. Baezinger*,
    673 F. Supp. 1478 (N.D. Cal. 1987) ................................................................................... 5

*Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*,
    341 F.Supp.2d 258 (S.D.N.Y. 2004) ................................................................................... 7

*Zapico v. Bucyrus-Erie Co.*,
    579 F.2d 714 (2d Cir. 1978) ............................................................................................... 8

## STATUTES

NY UCC 2-312 ........................................................................................................................... 6

## OTHER AUTHORITIES

60A N.Y. Jur. 2d Fraud and Deceit § 34 ................................................................................. 19

*Black's Law Dictionary*, 1247 (8th ed. 2004) ........................................................................ 18

*Black's Law Dictionary*, 1373 (8th ed. 2004) .......................................................................... 9

Fed R. Civ. P. 8 .......................................................................................................................... 5

Fed. R. Civ. P. 8(a) .................................................................................................................... 5

Fed. R. Civ. P. 8(a)(3) ................................................................................................................ 6

Fed. R. Civ. P. 8(d)(2) ................................................................................................................ 6

Fed. R. Civ. P. 9(b) .................................................................................................................... 5

Torts § 51 (4th ed. 1971) ............................................................................................................ 8

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**HARRY AND DAVID'S RESPONSE TO DEFENDANT'S MOTION
TO DISMISS
Page iv**

# I. INTRODUCTION

Defendant International Business Machines Corporation made deliberate misrepresentations and omissions to deceive Plaintiffs Harry and David and Harry and David Operations, Inc. (collectively "Harry and David") and to convince them to purchase software that IBM knew would subject Harry and David to liability for patent infringement. Then, shortly after Harry and David bought IBM's software, the rightful owners of the patents underlying IBM's software sued Harry and David for patent infringement. In violation of its contract with Harry and David, IBM then refused to indemnify Harry and David for its losses.

IBM now prematurely seeks to dismiss Harry and David's alternative claims for common law indemnity and breach of warranty against infringement. IBM further seeks to dismiss Harry and David's claims for fraud, contending that its reprehensible conduct "is found in virtually all commercial transactions" and was mere "commercial puffery." IBM's position is not well taken and runs contrary to applicable New York law.

# II. FACTUAL BACKGROUND

In 1999, Harry and David purchased software for an online catalog system from technology giant IBM. (Second Amended Complaint ("SAC") ¶ 13, 20.) Two years later, Harry and David purchased an IBM upgrade to this software called Websphere 4.2. (*Id.* at ¶ 21.) Then, in 2004, IBM notified Harry and David that it would no longer support Websphere 4.2, and that Harry and David would need to purchase another IBM upgrade known as Websphere 5.6 (IBM's software is collectively referred to as the "E-commerce Programs"). (*Id.* at ¶ 42.)

At the time that IBM was marketing Websphere 5.6 to Harry and David—and unbeknownst to Harry and David—IBM was also involved in litigation with Charles Hill and Associates in the U.S. District Court for the Eastern District of Texas in Marshall Texas

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**HARRY AND DAVID'S RESPONSE TO DEFENDANT'S MOTION
TO DISMISS
Page 1**

("Marshall").[1]  (*Id*. at ¶¶ 30-35.)  Hill specifically claimed that IBM had infringed three of Hill's patents through IBM's operation of its website and through IBM's creation and licensing of the E-commerce Programs.  (*Id*. at ¶ 30.)  During the course of this litigation, IBM learned that Hill later intended to embark on a campaign to sue IBM's customers for patent infringement for their use of the E-commerce Programs.  (*Id*. at ¶ 49.)

As early as 2002, IBM had also learned that the E-commerce Programs infringed on several U.S. patents belonging to NCR Corporation.  (*Id*. at ¶ 39.)  IBM subsequently obtained a license from NCR to use its patented technology, but didn't provide its E-commerce customers with this license.  (*Id*. at ¶ 40.)

Despite IBM's ongoing involvement in the Hill litigation, and despite its knowledge that the E-Commerce Programs infringed the Hill and NCR patents, IBM aggressively marketed Websphere 5.6 to Harry and David as an essential upgrade to its existing software.  (*Id*. at ¶¶ 41-46.)  During the course of negotiations, IBM purposefully failed to inform Harry and David that the E-commerce Programs infringed on the Hill and NCR patents or that IBM was involved in litigation with Hill.  (*Id*. at ¶¶ 48-49.)  And IBM continually represented to Harry and David that Websphere 5.6 would reduce Harry and David's costs to operate its online catalog, that Harry and David could operate Websphere 5.6 with no third-party dependence, and that IBM had the right to exploit the very technology that was the subject of Hill's and NCR's claims.  (*Id*. at ¶¶ 43-46.)

Of particular concern, during negotiations with Harry and David, IBM provided Harry and David with a proposed contract that specifically disclaimed any IBM liability for patent infringement resulting from Harry and David's purchase and use of Websphere 5.6.  (*Id*. at ¶¶ 51-52.)  Given the complexity of IBM's software, Harry and David deleted IBM's

---

[1] Marshall has a reputation for quick patent trials and plaintiff friendly juries.  Marshall also has an accelerated discovery schedule that forces corporate defendants to begin spending money early and often to mount a meaningful defense.  Marshall has accordingly become a hotspot for patent infringement claims.

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**HARRY AND DAVID'S RESPONSE TO DEFENDANT'S MOTION
TO DISMISS
Page 2**

disclaimer from the contract and substituted it with a provision that would provide Harry and David with indemnity for any patent infringement.  (*Id*. at ¶ 53.)  But IBM deleted this provision and instead informed Harry and David that the indemnity provision from IBM's 1991 International Customer Agreement ("ICA") would apply.  (*Id*. at ¶¶ 53-54.)  The indemnity provision of the ICA specifically says:

> If a third party claims that a Product we provide infringes a patent or copyright, we will defend you against that claim at our expense and pay all costs, damages, and attorney fees that a court finally awards provided that you:
>
> 1.  promptly notify us in writing of the claim; and
>
> 2.  allow us to control, and cooperate with us in, the defense and any related settlement negotiations.

(Mem. in Supp. of Mot. to Dismiss, Ex. A, p. 7.)  IBM then gave Harry and David a revised contract, which omitted IBM's disclaimer of liability for patent infringement and specifically provided that the terms of the ICA would apply.  (SAC, ¶ 55.)

Based on IBM's representations concerning Websphere 5.6, Harry and David bought Websphere 5.6 in December 2004.  (*Id*. at ¶ 56.)  IBM then began installing Websphere 5.6 on Harry and David's existing business computer system.  (*Id*. at ¶ 59.)

Shortly after its sale of Websphere 5.6 to Harry and David, IBM entered into a settlement agreement with Hill in Marshall on the eve of trial.  (*Id*. at ¶ 64.)  As a part of that settlement, IBM knowingly and intentionally permitted Hill to sue IBM's customers for patent infringement for their use of the E-commerce Programs.  (*Id*. at ¶ 65.)  Despite IBM's knowledge that its infringement would subject Harry and David to claims for patent infringement—and despite IBM's knowledge that Hill intended to sue IBM's customers for their use of the E-commerce Programs—IBM took no action to protect Harry and David from Hill's looming claims or even to inform Harry and David of Hill's plan.  (*Id*. at ¶ 66.) IBM instead began marketing another upgrade to Harry and David, representing that IBM was discontinuing service for Websphere 5.6.  (*Id*. at ¶ 67.)

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**HARRY AND DAVID'S RESPONSE TO DEFENDANT'S MOTION
TO DISMISS
Page 3**

Then, in June 2005, NCR notified Harry and David that Harry and David's use of the E-commerce Programs infringed on NCR's patents. (*Id*. at ¶ 68.) Harry and David dutifully notified IBM of NCR's claims and sought a defense and indemnity under the ICA. (*Id*. at ¶ 69.) In response, IBM refused to defend and indemnify Harry and David and refused to provide Harry and David with IBM's license to use NCR's technology. (*Id*. at ¶¶ 70-71.) Harry and David ultimately settled with NCR in June 2006 by purchasing its own separate license to use NCR's technology. (*Id*. at ¶ 75.)

One year later, in June 2007, Hill filed a complaint against Harry and David in Marshall, alleging that Harry and David's use of the E-commerce Programs infringed on Hill's patents. (*Id*. at ¶ 78.) Pursuant to the indemnity provision of the ICA, Harry and David formally tendered its defense of Hill's claims to IBM. (*Id*. at ¶ 79.) IBM again refused to defend or indemnify Harry and David, contending *inter alia* that the ICA and its indemnity provision simply did not apply to Harry and David's purchase and use of the E-Commerce Programs. (*Id*. at ¶ 80.) Then, due to Hill's aggressive litigation and the accelerated Marshall patent docket, Harry and David settled with Hill to mitigate its losses. (*Id*. at ¶¶ 81, 85.) IBM subsequently informed Harry and David that the indemnity provision of the ICA governed Harry and David's purchase of Websphere 5.6; nevertheless, IBM continues to refuse to indemnify Harry and David for its losses. (*Id*. at ¶¶ 87-88.)

## III. LEGAL STANDARD

When considering IBM's motion, the Court must take all allegations in the Second Amended Complaint as true, and view them in the light most favorable to Harry and David. *Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1997). The Court should not dismiss a claim unless it appears beyond doubt that Harry and David can prove no facts in support of that claim which would entitle it to relief. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

When fraud by misrepresentation is alleged, "the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b). A pleading satisfies this requirement

**Bullivant|Houser|Bailey PC**
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**HARRY AND DAVID'S RESPONSE TO DEFENDANT'S MOTION
TO DISMISS
Page 4**

if it includes statements regarding the time, place, and manner of each misrepresentation—and the circumstances indicating falseness—so defendant can prepare an answer. *Deutsch v. Flannery*, 823 F.2d 1361, 1365 (9th Cir. 1987); *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994).

The remaining fraud elements, and the elements of Harry and David's other claims, are subject to Rule 8's liberal notice pleading requirements. *See In re GlenFed*, 42 F.3d at 1547-48. Under Rule 8(a), a plaintiff need only provide enough "factual allegations to give the opposing party 'fair notice' of the claim against him and the grounds on which that claim is based." *Conley v. Gibson*, 355 U.S. 41, 47 (1957); Fed. R. Civ. P. 8(a).

Additionally, when fraud by omission is alleged, Rule 9(b)'s particularity requirements are less strictly applied. *Washington v. Baezinger*, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987); *see also Swedish Civ. Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F. Supp.2d 785, 799 (D. Md. 2002) ("an omission cannot be described in terms of time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation"); *Bonfield v. AAMCO Transmissions, Inc.*, 708 F. Supp. 876, 875 (N.D. Ill. 1989) (particularity requirements less strictly applied with respect to fraud by omission). As noted in *Washington*, "Where the fraud consists of omissions . . ., the plaintiff may find alternative ways to plead the particular circumstances of the fraud." 673 F. Supp. at 1482.

In this case Harry and David has provided IBM with the specificity required by Rule 9(b) and Ninth Circuit case law. IBM's motion should, therefore, be denied.

## IV. ARGUMENT

### A. Harry and David's claims for common law indemnity and breach of the warranty of noninfringement are alternative theories of relief.

IBM's effort to dismiss Harry and David's alternative claims for common law indemnity and breach of the warranty of noninfringement is premature. "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**HARRY AND DAVID'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS
Page 5**

count or defense or in separate ones." Fed. R. Civ. P. 8(d)(2); Fed. R. Civ. P. 8(a)(3) (a complaint must contain "a demand for the relief sought, which may include relief in the alternative or different types of relief").

After Harry and David tendered its defense of Hill's claims to IBM, IBM refused to indemnify Harry and David under the theory that the ICA—as well as its indemnity and warranty provisions—was inapplicable to Harry and David's purchase of the E-Commerce Programs. (SAC, ¶ 80, 86.) IBM's final position on the applicability of the ICA and its various provisions is set out in footnote 1 of its brief, where it says, "IBM makes no representations or concessions regarding the applicability of the ICA to the software and services at issue in this litigation."[2] Harry and David has accordingly submitted a claim for declaratory relief on this point. In the event that IBM successfully argues that the ICA does not apply to Harry and David's purchase and use of Websphere, then the disclaimer of warranties and the indemnity provision contained in the ICA would similarly be inapplicable. Accordingly, Harry and David has asserted alternative theories of relief for common law indemnity and breach of the NY UCC 2-312 warranty against infringement.

And although Harry and David's alternative claims may be inconsistent with the terms of the ICA, inconsistent claims "should not be construed as an admission against another alternative or inconsistent pleading in the same case." *McCalden v. Calif. Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990). The issue of the applicability of the ICA must be resolved prior to any determination of whether NY UCC 2-312 and the doctrine of common law indemnity applies to Harry and David's purchase of the E-commerce Programs.

This very issue arose in *MDCM Holdings, Inc. v. Credit Suisse First Boston Corp.*, 216 F.Supp.2d 251 (S.D.N.Y. 2002). In *MDCM Holdings*, defendant Credit Suisse moved to dismiss plaintiff MDCM's claim for unjust enrichment because the contract between the

---

[2] To the extent that IBM asserts that the ICA applies, IBM should be judicially estopped from contending that the portions of the ICA that do not run its favor are inapplicable.

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**HARRY AND DAVID'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS
Page 6**

parties provided the remedy for MDCM's recovery.  The court agreed that a valid contract would preclude MDCM's claim for unjust enrichment, but held that "MDCM's claim for unjust enrichment survives at the pleading stage because a party may plead in the alternative."  *Id.* at 261.  The court further said:

> Whether the contracts at issue, in fact, cover the subject matters in controversy has not been determined.  If this Court ultimately finds that the subject matter of the contract [applies], then MDCM concedes that its unjust enrichment claim should be dismissed.  But should this Court find otherwise, and therefore dismiss MDCM's three contract claims, MDCM will be allowed to proceed on its unjust enrichment claim.  Either way, it is not appropriate to dismiss the unjust enrichment claim at this time.

*Id.* (citations and brackets omitted.)

Similarly, in *Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*, 341 F.Supp.2d 258 (S.D.N.Y. 2004), plaintiff Xpedior sued defendant Credit Suisse for both breach of contract and breach of the implied duty of good faith and fair dealing.  Credit Suisse moved to dismiss Xpedior's claim for breach of the implied covenant because, "as a matter of New York law, the same operative facts cannot simultaneously give rise to claims for both implied and express covenants."  *Id.* at 272.  The court recognized that Credit Suisse had accurately stated the law, but denied Credit Suisse's motion to dismiss Xpedior's claim because "the Federal Rules permit a party to plead causes of action in the alternative, 'regardless of consistency.'  Thus, while Xpedior may not press both claims *to judgment*, it is free to litigate both."  *Id.* (emphasis in original).

So although the Court may ultimately determine that the indemnity and warranty provisions of the ICA apply to Harry and David's purchase of the E-Commerce Programs, thereby rendering Harry and David's alternative claims inapplicable, that issue has not yet been resolved.  Therefore, Harry and David is permitted to litigate all of its alternative claims, and IBM's premature motion to dismiss should be denied.

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**HARRY AND DAVID'S RESPONSE TO DEFENDANT'S MOTION
TO DISMISS
Page 7**

**B.    Harry and David is not required to allege a "special relationship" to state a claim for common law indemnity.**

IBM's assertion that "a common law claim for indemnity arises only out of the 'special nature of a contractual relationship' between the would-be indemnitee and indemnitor" is simply wrong.  According to *People's Democratic Rep. of Yemen v. Goodpasture Inc.*—the very case that IBM cites to support its argument that Harry and David must allege a special relationship—"A second set of circumstances in which indemnity may be found has been called 'implied in law' indemnity.  This is a tort-based right to indemnification found when there is a great disparity in the fault of two tortfeasors, and one of the tortfeasors has paid for a loss that was primarily the responsibility of the other."  782 F.2d 346, 351 (2d Cir. 1986) (citing *Nye v. A/S/D/S Svendborg*, 501 F.2d 376, 380 (2d Cir. 1974); *Zapico v. Bucyrus-Erie Co.*, 579 F.2d 714, 718 (2d Cir. 1978); W. Prosser, Law of Torts § 51 (4th ed. 1971)); *see also Fromer v. Yogel*, 50 F.Supp.2d 227, 240 (S.D.N.Y. 1999) (applying New York law); *McDermott v. City of New York*, 50 N.Y.2d 211, 217, 406 N.E.2d 460 (N.Y. 1980).

Harry and David's complaint alleges clearly that IBM was fully responsible for any infringement of the NCR, Hill, and other Patents:

> There is a great disparity in the fault of IBM and Harry and David for Harry and David's infringement of the Hill, the NCR, and other patents.  Harry and David's infringement of these patents is directly due to IBM's infringement of these patents in the creation and sale of the E-commerce Programs.  IBM's infringement was primary and active while any infringement by Harry and David was unknown and merely secondary and passive.
>
> As between Hill, NCR, and Harry and David, Hill's and NCR's damages were the responsibility of IBM, as IBM's creation and sale of the E-commerce Programs is the primary and active cause of Hill's and NCR's damages.  Harry and David has paid for these losses, and IBM is liable to Harry and David for the expenses it incurred to defend against and settle the Hill and NCR claims.  Harry and David has been damaged by IBM's conduct in an amount to be determined at trial, but in any event, not less than $1,000,000.

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**HARRY AND DAVID'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS
Page 8**

(SAC, ¶¶ 159-60.)  Thus, Harry and David has stated a claim for common law indemnity, and the purported lack of a "special relationship" between the parties is a non-issue.

**C.     Harry and David has stated a fraud claim.**

      **1.     IBM's deliberate use of misrepresentations and material omissions to deceive Harry and David and induce it to purchase IBM's software constitutes "scienter."**

To state a prima facie claim for fraud, the complaint should contain allegations of a misrepresentation of or failure to disclose a material fact, falsity, scienter, reliance, and injury.  *See, e.g.*, *American Home Assur. Co. v. Gemma Const. Co.*, Inc., 275 A.D.2d 616, 713 N.Y.S.2d 48 (N.Y. App. 2000); *Small v. Lorilland Tobacco Co., Inc.*, 94 N.Y.2d 43, 720 N.E.2d 892 (N.Y. 1999).  "Scienter" is an intent to deceive, manipulate, or defraud. *Black's Law Dictionary*, 1373 (8th ed. 2004).  An intent to "defraud" is the intent "to cause injury or loss to (a person) by deceit."  *Id*. at 456.  And a defendant's "knowledge of falsity or reckless pretense of knowledge may establish scienter."  *Bd. of Educ. of Hudson City School Dist. v. Sargent, Webster, Crenshaw & Foley*, 146 A.D.2d 190, 199, 539 N.Y.S.2d 814 (N.Y. App. 1989) (citing *Nat.'l Conversion Corp. v. Cedar Bldg. Corp.*, 23 N.Y.2d 621, 626, 298 N.Y.S.2d 499 (N.Y. 1969)); *see also Houbigant, Inc. v. Deloitte & Touche LLP*, 303 A.D.2d 92, 97, 743 N.Y.S.2d 493 (N.Y. App. 2003) (holding that accounting firm's failure to acknowledge irregularities and inaccuracies that it knew could have a material impact on the accuracy of financial statements was sufficient to adequately plead scienter); *Abbate v. Abbate*, 82 A.D.2d 368, 378, 441 N.Y.S.2d 506 (noting that scienter is the "knowledge of the falsity of [a] representation") (N.Y. App. 1981).

Moreover, New York law "does not require [] specific intent for a fraud claim. Rather, the plaintiff must only allege facts from which it may be inferred that the defendant was aware that its misrepresentations would be reasonably relied on by the plaintiff." *Houbigant*, 303 A.D.2d at 100.

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**HARRY AND DAVID'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS
Page 9**

Citing the unpublished opinion of a New York trial court in *Technical Support Services Inc. v. Int'l Bus. Machines, Corp.*, 2007 WL 4500382 (N.Y. Sup. Ct. 2007), IBM urges this Court to accept an unprecedented standard:  That IBM's deliberate use of misrepresentations and material omissions to deceive Harry and David and induce it to purchase IBM's multi-million dollar software is insufficient to constitute "scienter" because such intent "is found in virtually all commercial transactions."  IBM's proposition stretches the case-specific holding of *Technical Support Services* and runs contrary to established New York law.

The simple truth is that the holding in *Technical Support Services* is not nearly as broad as IBM contends.  In that case, plaintiff Technical Support Services, Inc. ("TSSI") entered into a subcontract with IBM to provide information technology services for a project that IBM had undertaken for the Shering Corporation.  *Tech. Support Services*, 2007 WL 4500382 at *1.  After TSSI commenced work under the subcontract, it discovered that the amount of services required for the Schering project were greater than what IBM had initially represented.  TSSI then sued IBM for fraud.

Notably absent from the *Technical Support Services* case was any evidence of IBM's intent to deceive TSSI or to induce TSSI to act to its detriment.  In fact, the evidence submitted to the trial court on summary judgment showed that "IBM employees 'were as surprised as [TSSI] about the increased volumes' of work in the days after the go-live date, and that IBM suspected that Schering had perhaps misrepresented the amount of work to be performed to IBM and TSSI collectively."  *Id.* at *24.  Moreover, the subcontract between IBM and TSSI allowed for alterations, thereby allowing TSSI to be paid retroactively for the extra work that it performed.  *Id.*  Accordingly, TSSI was left to speculate that IBM's salespeople were motivated to defraud TSSI out of a desire for higher compensation.  *See id.* at *25.

The Court rejected TSSI's speculative contention, noting that "the motive ascribed to

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**HARRY AND DAVID'S RESPONSE TO DEFENDANT'S MOTION
TO DISMISS
Page 10**

IBM's employees here – *a desire for higher compensation* – is found in virtually all commercial transactions . . . ."  *Id.* (emphasis added).

Here, Harry and David makes no such generalized allegation concerning the compensation of IBM's salespeople.  Rather, Harry and David alleges that *IBM made deliberate misrepresentations and omissions to deceive Harry and David and induce it to purchase software that IBM knew would subject Harry and David to liability for patent infringement.*  (SAC, ¶¶ 133, 148.)  And unlike in *Technical Support Services*, IBM cannot credibly state that such infringement was a surprise; IBM was litigating that very issue with Charles Hill and Associates at the time of its negotiations with Harry and David.  IBM's calculated intention to take advantage of Harry and David cannot—in any sense—be "found in virtually all commercial transactions."

Indeed, New York courts have repeatedly held that misrepresentations and omissions designed to induce a plaintiff to make a purchase constitute "scienter."  For example, in *Cirillo v. Slomin's Inc.*, 196 Misc.2d 922, 768 N.Y.S.2d 759 (N.Y. Sup. 2003), plaintiffs asserted a claim for fraud against defendant, an alarm company, alleging that defendant's salesman made misrepresentations about the capabilities of the alarm system that plaintiffs had purchased from defendant.  Defendant moved to dismiss the fraud claim because "plaintiffs failed to allege scienter."

The court disagreed and held that "it can be inferred from the context of the alleged statement that [the salesman] intended to induce plaintiff's to purchase the [] alarm system and monitoring system."  *Id.* at 927.  The facts alleged in the complaint were therefore "sufficient to put defendants on notice of the misconduct complained of, and thus [were] sufficient to withstand dismissal."  *Id.*

Other examples abound:

§   *Channel Master Corp. v. Aluminum Limited Sales, Inc.*, 4 N.Y.2d 403, 406-07, 151 N.E.2d 833, 176 N.Y.S.2d 259 (N.Y. 1958) (citations omitted, emphasis added):

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**HARRY AND DAVID'S RESPONSE TO DEFENDANT'S MOTION
TO DISMISS
Page 11**

"To maintain an action based on fraudulent misrepresentations . . . it is sufficient to show that the defendant knowingly uttered a falsehood, intending to deprive the plaintiff of a benefit, and that the plaintiff was thereby deceived and damaged." Accordingly, "one 'who fraudulently makes a misrepresentation of intention for the purpose of *inducing another to act or refrain from action in reliance thereon on in a business transaction*' is liable for the harm caused by the other's justifiable reliance upon the misrepresentation."

§   *Hadcock v. Osmer*, 153 N.Y. 604, 608, 47 N.E. 923 (N.Y. 1897): "One who falsely asserts a material fact, susceptible of accurate knowledge, to be true of his own knowledge, and thereby induces another to act upon the fact represented to his prejudice, commits a fraud which will sustain an action for deceit."

§   *Commodity Futures Trading Com'n v. Vartuli*, 228 F.3d 94, 108 (2d Cir. 2000) (citations omitted): The defendants "made false and misleading representations to customers . . . in an effort to induce customers to purchase [their computer] program and follow [its] recommendations. It has long been understood that such 'frauds may be denounced as offenses and punished by law.'"

In sum, IBM's attempt to excuse its conduct as a common business practice is not well taken and is wholly contrary to New York case law. Moreover, IBM's proposed standard would make it nearly impossible for any plaintiff to assert a claim for fraud where a defendant made material misrepresentations or omissions to induce the plaintiff to enter into a commercial transaction.

Under these circumstances, Harry and David has alleged facts sufficient to support the element of "scienter."

**2.    Harry and David's fraud claims are independent of its claim for breach of contract.**

IBM's assertion that Harry and David's fraud claims are impermissibly duplicative of its claim for breach of contract is without merit. "A fraud claim should be dismissed as

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**HARRY AND DAVID'S RESPONSE TO DEFENDANT'S MOTION
TO DISMISS
Page 12**

redundant when it merely restates a breach of contract claim, *i.e.*, when the only fraud alleged is that the defendant was not sincere when it promised to perform under the contract." *First Bank of the Americas v. Motor Car Funding, Inc.*, 257 A.D.2d 287, 291, 690 N.Y.S.2d 17 (N.Y. App. 1999) (citation omitted). "By contrast, a cause of action for fraud may be maintained where a plaintiff pleads a breach of duty separate from, or in addition to, a breach of the contract." *Id.*; *see also Crowley v. Marine Assocs. v. Nycomm Assocs., L.P.*, 292 A.D.2d 334, 334 (N.Y. App. 2002) (holding that a plaintiff's assignment of scienter in a cause of action for breach of contract does not convert the claim to one for fraud "unless the representations alleged to be false are collateral or extraneous to the terms of the agreement"). In fact, the very same conduct "which constitutes a breach of a contractual obligation may also constitute the breach of a duty arising out of the contract relationship which is independent of the contract itself." *Davis v. Dime Savings Bank of New York, FSB*, 158 A.D.2d 50, 52, 557 N.Y.S.2d 775 (N.Y. App. 1990) (citing *Mandelblatt v Devon Stores*, 132 A.D.2d 162, 167-68, 521 N.Y.S.2d 672); *MBW Advertising Network, Inc. v. Century Business Credit Corp.*, 173 A.D.2d 306, 306, 569 N.Y.S.2d 682 (N.Y. App. 1991).

Harry and David's allegations of fraud are collateral and extraneous to the terms of the ICA. Harry and David's claims for fraud generally relate to misrepresentations and material omissions that IBM made during negotiations for Harry and David's purchase of Websphere 5.6.[3] Each of these representations and omissions were made prior to Harry and David's purchase of Websphere 5.6, and were in fact designed to deceive Harry and David and induce it to purchase IBM's software. IBM's subsequent breaches of the terms of the ICA were unrelated to its initial efforts to con Harry and David into purchasing IBM's infringing software.

---

[3] The exception to this schematic is IBM's warranty in the ICA that it had the "right to license" the E-Commerce Programs. As discussed in greater detail below, a fraud claim can be based on a breach of warranty notwithstanding the existence of a breach of contract claim.

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**HARRY AND DAVID'S RESPONSE TO DEFENDANT'S MOTION
TO DISMISS
Page 13**

Nevertheless, IBM submits a table to the Court that purportedly demonstrates that the "the allegations underlying the cause of action for breach of contract and the causes of action for fraud are virtually identical." (Mem. in Supp. of Mot. to Dismiss, pp. 15-16.) Notably absent from IBM's table are the following allegations supporting Harry and David's claims for fraud:

§   IBM failed to disclose and concealed the material fact that the E-commerce Programs infringed on the Hill, the NCR, and other Patents (SAC ¶ 146);

§   IBM failed to disclose and concealed the material fact that it did not have a license to use the Hill technology and instead needed to obtain such license (*Id.*);

§   IBM failed to disclose and concealed the material fact that IBM was involved in the Hill litigation (*Id.*);

§   IBM failed to disclose and concealed the material fact that Hill intended to sue IBM's customers for their use of the E-Commerce Programs (*Id.*);

§   IBM falsely represented that Websphere 5.6 would "reduce the cost" of Harry and David's operation of its online catalog (*Id.* at ¶ 126);

IBM's failure to equate these allegations with Harry and David's claim for breach of contract is not surprising. None of the allegations are repeated in Harry and David's claim for breach of contract since IBM made each of these fraudulent misrepresentations and omissions before Harry and David purchased Websphere 5.6 from IBM. Accordingly, IBM's fraudulent acts were extraneous and collateral to the terms of the ICA.

With respect to the allegations that IBM has actually listed in its table, Harry and David concedes that its allegation that IBM had falsely represented that it would "honor and apply" the ICA is duplicative of its claim for breach of contract. But IBM mischaracterizes the remaining fraud allegations that are listed. A cursory glance at these allegations shows that they too were made prior to the time that Harry and David purchased Websphere 5.6 and

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**HARRY AND DAVID'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS
Page 14**

were extraneous to the terms of the ICA. These allegations are discussed below.

IBM first equates its false representation that it had the right to license the E-Commerce Programs with its breach of the ICA warranty that IBM had the right to sell the E-Commerce Programs. But a fraud claim is not "rendered redundant by the fact that [a defendant's] misrepresentations breached the warranties made [in a contract]." *First Bank of the Americas*, 257 A.D.2d at 292. "A warranty is not a promise of performance, but a statement of present fact. Accordingly, a fraud claim can be based on a breach of contractual warranties notwithstanding the existence of a breach of contract claim." *Id*. (citation omitted). Therefore, IBM's failure to honor the warranties contained in the ICA gives rise to claims for both fraud and breach of contract.

IBM next equates its false representation that Websphere 5.6 would "provide a lower total cost of ownership" with its breach of the ICA's provision that Harry and David would only be required to pay for the E-Commerce Programs once. But IBM's misrepresentations concerning the "lower total cost of ownership" of Wesphere 5.6 do not stem from the ICA itself; instead, they stem from IBM representatives Steve Mello and Manny Amorim's verbal and written statements to Harry and David *before Harry and David ever entered into any agreement to purchase Websphere 5.6.* (SAC, ¶ 126.) Based on these representations, Harry and David purchased Websphere 5.6 from IBM. Therefore, IBM's misrepresentations concerning the "lower total cost of ownership" of Websphere 5.6 are wholly collateral.

IBM next cites only a portion of the fraud allegations contained in paragraph 134 of Harry and David's complaint and contends that they are impermissibly duplicative of the patent infringement allegations contained in Harry and David's claim for breach of contract. The missing portion of paragraph 134 provides context to the patent infringement allegations that IBM attacks. In its entirety, paragraph 134 says, "IBM in fact *did not have the right to license the E-commerce Programs*, as they infringed on the Hill, the NCR, and other patents at the time IBM issued them." (SAC, ¶ 134.) (emphasis added.) This allegation simply

**Bullivant|Houser|Bailey PC**

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**HARRY AND DAVID'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**
**Page 15**

demonstrates *why* IBM's warranty that it had the "right to license" the E-commerce Program was false. As discussed above, "a fraud claim can be based on a breach of contractual warranties notwithstanding the existence of a breach of contract claim." *First Bank of the Americas*, 257 A.D.2d at 292 (citation omitted). Thus, Harry and David is permitted to proceed on its fraud allegations concerning IBM's patent infringement.

Finally, IBM equates its false representations that it "had the right to license the E-commerce Programs," that its software provided a "lower total cost of ownership" through a "single integrated platform," that IBM would provide "the entire solution and a complete, end-to-end solution that addresses the entire value chain," that Websphere was "integrated and in-the-box with no third-party dependence," and that IBM "had the right to exploit the available state of the art caching technology" with IBM's breach of the ICA warranty that it "has the right to license the E-commerce Programs" and that "Harry and David will only be required to pay for the E-commerce Programs once." But IBM—again—misconstrues Harry and David's allegations. With the exception of IBM's false representation that it had the "right to license the E-Commerce Programs,"[4] the fraudulent representations noted above do not stem from the ICA. These misrepresentations were made by IBM representatives Steve Mello and Manny Amorim and were also contained in IBM's October 2004 "Bear Creek Operations (BCO) e-Commerce Migration to Websphere Commerce 5.6 Assessment, Estimate, and Recommendations." (SAC ¶¶ 126–130.) Moreover, these misrepresentations were made before Harry and David purchased Websphere 5.6 and, in fact, induced Harry and David to purchase Websphere 5.6. Thus, IBM's misrepresentations are collateral and extraneous to the terms of the ICA.

In short, IBM's contention that Harry and David's fraud claims are impermissibly duplicative of its breach of contract claim misconstrues—and ignores many of—Harry and

---

[4] As discussed above, New York law allows Harry and David to assert both claims for fraud and breach of contract relating to IBM's breach of this warranty.

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**HARRY AND DAVID'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS
Page 16**

David's allegations. Harry and David's fraud allegations are separate and independent of the allegations supporting its claim for breach of contract. Harry and David should accordingly be permitted to pursue its remedies against IBM's deliberate efforts to mislead Harry and David and induce it to purchase IBM's software.

      **3.**      **IBM's fraudulent statements do not qualify as mere commercial "puffery."**

IBM attempts to further minimize its conduct by asserting that each of the fraud allegations that are not specifically listed in IBM's table were non-actionable statements of commercial "puffery." Despite this sweeping assertion, IBM draws the Court's attention only to IBM's representations concerning the cost of ownership of Websphere 5.6. IBM fails to address the fraudulent omissions alleged in Harry and David's complaint. IBM's failure to address these allegations is—again—not surprising. Obviously, there could be no statement of commercial "puffery" in IBM's complete failure to inform Harry and David that the E-commerce Programs infringed on Hill and NCR's patents, that IBM was involved in litigation with Hill over the technology underlying the E-commerce Programs, or that it knew Hill would sue Harry and David for its use of the E-commerce Programs.

Nor do IBM's statements concerning the cost of Websphere 5.6 qualify as protected commercial speech. IBM cannot avail itself of the commercial "puffery" doctrine where it specifically knew that its representations were false. *City of New York v. Lead Industries Ass'n, Inc.*, 190 A.D.2d 173, 597 N.Y.S.2d 698 (N.Y. App. 1993). In *City of New York*, plaintiffs alleged that defendants, who were manufacturers of lead-based paint, had known for years, through their own independent studies, that lead-based paint presented significant health threats. Despite defendants' knowledge, they continued to advertise and promote their lead-based products as appropriate for uses which might result in exposure to young children. *Id.* at 176. Plaintiffs sued for fraud, and defendants moved against their claim, contending that defendants' conduct qualified as mere commercial speech. The court emphatically

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**HARRY AND DAVID'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS
Page 17**

disagreed:

> Armed with such knowledge, which was clearly superior to that of the consuming public, defendants cannot expect their actions to be protected as mere statements of opinion in an action for fraud and misrepresentation. Notwithstanding the fact that there is room under the First Amendment umbrella for "commercial speech", untruthful utterances, commercial or otherwise, have never been entitled to such protection.

*Id.* (citations omitted.)

Similarly, as the creator of the E-commerce Programs and through its involvement in the Hill litigation, IBM knew that it had infringed on various patents and that its customers would have to buy additional licenses to legally operate the E-Commerce Programs. Despite this knowledge, IBM represented to Harry and David that Websphere 5.6 would reduce its costs to operate its online catalog. IBM cannot now excuse its intentional misconduct as mere commercial "puffery."

And in any case, IBM's misrepresentations concerning the cost of Websphere 5.6 were not the type of generalized and exaggerated statements of value that are typically protected as statements of commercial speech. General representations concerning the value of a product are typically considered "matters of opinion and do not provide the basis for a cause of action in fraud." *Augsbury v. Adams*, 135 A.D.2d 941, 942, 522 N.Y.S.2d 691 (N.Y. Sup. 1987); *see also Black's Law Dictionary*, 1247 (8th ed. 2004) ("Puffing involves expressing opinions, not asserting something as a fact. Although there is some leeway in puffing goods, a seller may not misrepresent them or say that they have attributes that they do not possess."). For example, in *Sutton Associates v. Lexis Nexis*, 196 Misc.2d 30, 761 N.Y.S.2d 800 (N.Y. Sup. 2003), defendant represented that the rates offered for its online services were the "lowest" then available. The court held that the statement constituted "nonactionable, 'puffery' and/or commendatory sales representations on which a sophisticated commercial entity could not reasonably rely." *Id.* at 31.

In contrast, IBM's statements were not mere commendatory sales representations that

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**HARRY AND DAVID'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**
**Page 18**

Websphere would be provided at some subjectively "low cost."  IBM instead represented that its advanced technology would literally reduce Harry and David's previous costs to operate its online catalog.  These specific representations—particularly given IBM's familiarity with Harry and David's previous online catalog operations—were not the type of generalized statements of value that IBM declares them to be.

Finally, it should be noted that a seller's general commendations of a product are not protected where there is a disparity of information or ability to judge the value of the product between the two parties.  60A N.Y. Jur. 2d Fraud and Deceit § 34; *see also Dorfman Organization, Ltd. v. Greater New York Mut. Ins. Co.*, 279 A.D.2d 437, 719 N.Y.S.2d 573 (N.Y. App. 2001) (defendant's statements of profitability were mere puffery, as the defendant did not possess knowledge superior to that of insurers).  Harry and David sells gourmet fruit, gift baskets, candies, and desserts.  It is not a technology company, and obviously is not familiar with technological methods for streamlining the efficiency of online catalogs.  Harry and David accordingly relied on IBM, one of the largest technology companies in the world, to provide it with the software needed to operate its online catalog in the most cost-effective manner.

IBM, on the other hand, is adept at creating technological cost solutions and was perfectly aware that the E-commerce Programs infringed on the Hill and NCR Patents. Harry and David was not on equal footing with IBM, and IBM took deliberate advantage of that fact.

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**HARRY AND DAVID'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS
Page 19**

## V.  CONCLUSION

For the foregoing reasons, and with the exception of Harry and David's duplicative allegation concerning IBM's false representation that it would "honor and apply" the ICA, Harry and David respectfully requests that the Court deny defendant IBM's motion to dismiss.

DATED this 2nd day of July, 2008.

BULLIVANT HOUSER BAILEY PC


BY _____/s/ Chad M. Colton_____.
**Renée E. Rothauge,** OSB #903712
**Chad M. Colton,** OSB #065774
Telephone: 503.228.6351
Attorneys for Plaintiff


10639092.1

---

**Bullivant|Houser|Bailey PC**

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**HARRY AND DAVID'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**
**Page 20**